Next matter is in Re Spansion. Good morning, Mr. Laskowski. Good morning, Your Honor. Michael Laskowski, the law firm. Ryan Morris, LLP. Here today on behalf of the appellant, Spansion Inc. Your Honor, resolution of this appeal really comes down to the really to two issues, whether there was a final order of which an appeal could be taken, and then secondly, as to the merits, as to whether Apple was entitled to relief under Rule 60 when there was absolutely no factual record made and no factual findings made to support a finding that there was a mistake or surprise. Well, the bankruptcy judge thought he had made a mistake. I mean, right out of the box, I wondered about that in your briefing, too. The bankruptcy court went through pretty much and say, nobody treated this thing as a termination, including your client. It was a motion for rejection. It was argued as a motion for rejection. It was dealt with as a motion for rejection, but for the use of the term termination in the draft you prepared, which evidently got passed to everybody, we wouldn't be sitting here. So under those circumstances, with nobody having been given a heads up that what we're talking about here is termination, wouldn't you say it's extraordinary for suddenly termination to be the determinative legal point? Your Honor, if I may, I didn't reserve time for rebuttal. I'd like to reserve five minutes. I'm sorry. Your Honor, to your point, it is true that it was a motion for rejection under Section 365 of the Bankruptcy Code, and that rejection is distinct from termination. When there's rejection, it just means the debtor's deemed to be in breach of the contract as of the petition date. Termination is, of course, different. The order did provide for termination. However, I think it's important to note that the order was filed with a motion. It was served on opposing counsel six weeks before the hearing. The question is, and I think the record bears this up, but correct me if I'm wrong. Nobody breathed a word about termination. It shows up for the first time. The word appears in the fourth or fifth paragraph down in the order, and it's not even commented on as a point at the hearing where it's accepted. It's there, and nobody's talked about it, right? Correct. But again, it was in the order, and it was reviewed by counsel for Apple at the conclusion of the hearing, and the bankruptcy court specifically asked, have you had a chance to review this order, and do you have any comment? And his response was no. It was an order that was less than 250 words long. It's a very short and distinct order. But we have a bankruptcy judge saying, I made a mistake. This was never brought up. I didn't mean to do this. Well, we have a bankruptcy judge who, at a hearing, said he was surprised that counsel would review the order and not bring it to his attention. I understand that. He's unhappy with Apple, sure. I'm sure any judicial officer who's counting on both sides to be paying attention, including the side whose interests might suffer, to point out a problem. So, you know, Apple's got some mud on its face. But that doesn't change the fact, does it, that, as Judge Sirka points out, when you say there's no fines, in fact, there's no record, you've got a bankruptcy court judge saying, this never came up. It was a mistake that this thing got slipped past everybody. It shouldn't have happened. Isn't that and the record that supports it enough to say it's no abuse of discretion for the judge and then the district court following to say, yeah, relief under 60p6. But let's examine that. You paraphrase a bankruptcy court saying this wasn't focused on and it slipped by, although I think that's not precisely what he said, but we don't know what Apple's position was on this. We know what counsel said. They presented no testimony whatsoever as to whether they had looked at this order and decided they were going to acquiesce in termination and change their mind later. There was no evidence, and this was a finding by the bankruptcy court, no evidence that this mattered to Apple. Why did this matter to them? And so the finding of extraordinary circumstances in undue hardship comes from the perspective of the party. The court can make this observation casually. The abuse is made, well, under the abuse of discretion standard, this court is required to see whether the bankruptcy court made an error of judgment in the conclusion it reached upon a weighing of the relevant factors. And here relief was granted under Rule 60. Rule 60 has certain factual. 60B-6. 60B-6, well, 60B-6, correct, where there are certain factual predicates to granting relief. There has to be a showing of extreme and unforeseen hardship, which in this case. Is it extraordinary to have a motion for one thing turn into an order for something else with nobody having talked about it? When counsel acquiesces in the order. Is it an abuse of discretion for the bankruptcy court to see that and say that is extraordinary? Well, perhaps extraordinary in lay terms, but not under the legal standards. What's extraordinary here when counsel for Apple states that he read the order and he understood it and just thought, well, this is of no legal effect. This isn't authorized by the bankruptcy code, and therefore I'll do nothing. Can I switch gears here for just a minute? There was a statement made in the bankruptcy court when talking about whether there would be a remand where counsel said, I have to say I'm not sure if there's anything further to be done if we're not to appeal. Does that amount to a concession that there really is nothing except a ministerial act if the matter were to go back to the bankruptcy court? If you look at what happened here, there was a motion to reject the letter of agreement. The court permitted rejection, and Apple made an election to retain its rights as a non-debtor licensee. The bankruptcy court struck that election. The district court reversed and remanded. It's important to note, on the other hand, that the bankruptcy court said that its order was without prejudice to the issue of whether, in fact, this agreement had been terminated or could be terminated. And if you really look at this at a deeper level... At the time that order was entered, had the ITC action been concluded? I don't think so. I don't think so, but I don't know. So that was still pending out there? Yeah. But query, if the court were to have found that perhaps it should have made that finding before it entered the order that it did, that in fact, Spansion was entitled to termination at will just by giving notice of termination, then this would all be rendered moot. Is there any evidence at all in the record that Spansion terminated this contract? The order. I would submit that the order itself is certainly sufficient for a factual finding that Spansion gave notice of its decision to terminate, and that was notice of termination. Other than the word termination in the order. Is there anything else in the record? Nothing other than the order and the statements made of counsel at this hearing. But it was clearly evidenced that Spansion intended to terminate this agreement. All Spansion had to do was make its election once the contract was rejected. It didn't need to do anything until the bankruptcy court ruled on your rejection of the contract. Correct? I'm sorry. But Spansion could just by giving notice of termination terminate the agreement. Apple. Apple didn't need to do anything until the rejection of the executory contract was entered. Yeah, correct, in terms of making an election. So therefore there wouldn't have been anything on the record as to whether or not they wanted to retain their rights or terminate. Spansion was the one that retained its rights to terminate. Spansion retained its rights to terminate, and you did that by rejecting the contract in bankruptcy. Well, the argument against that would be a rejection is distinct from termination. Okay, well that's Apple's argument. But Judge Jordan was asking what was on the record. There was no necessity in the bankruptcy court for Apple to put anything on the record as to what it would do under 365 if in fact the contract was ordered to be rejected. Well, other than the fact that in fact they took a position it was rejected and they wanted to make the election. And they made your election? Correct. My time is about up. We'll have you back on rebuttal. Mr. O'Quinn. Good morning. Thank you, Judge Sirica. May it please the court. The question in this case comes down to this. After the bankruptcy court had granted Spansion's rejection motion, was Apple entitled to make a 365-N election to retain its intellectual property license? And the statute itself answers that question. Yes. The first question really is, are we properly here? Since there was an order from Judge Cougar remanding the case. Do you want to tackle that first? Sure, absolutely, Judge Jordan. The court certainly has jurisdiction over this appeal for two independent reasons. First, under traditional tests for finality, the only thing that remains to be done on remand to the bankruptcy court would be the entering of a ministerial order, just simply reinstating Apple's notice of election. And then second, under this court's decision in Henry Continental Airlines and going back to Henry Marin Oil, whether or not it was a final decision from the district court, it certainly was a final decision by the bankruptcy court. The fact that the district court reversed it doesn't divest this court of appellate jurisdiction under that precedent. We've got, I mean, we've paid pretty close attention to Ingrid Blatstein over the years. I mean, there's not a bright line test the way Continental might have implied, is there? We have to look at those factors to decide whether there's a judgment that's final enough, don't we? Well, Judge Jordan, I think you do have flexibility in the sense that it's not, I agree it's not a bright line test, having said that, where you have a district court here that is remanding really just for ministerial action. Then under the traditional test, you certainly have jurisdiction. But even under the more functional test, if you look at the bankruptcy court's jurisdiction, what would be implicated, this is the kind of case that for reasons of judicial efficiency and economy, it makes sense for this court to go ahead and exercise jurisdiction and give all the lower courts guidance to the extent needed. That's true if one assumes that it's just a ministerial act. But, of course, your opposing counsel has just argued and has at length in their briefing argued that there's a lot more to be done. Judging into whether there was a termination or not, why are they wrong about that? And if they are wrong about it, what do you think? I don't want to make you into a mind reader, but what do you suppose Judge Cougar was thinking about when he sent it back? It's not for something substantive. Well, let me take the second question first, and perhaps the two end up blending together. For whatever reason, the district court's opinion throughout refers to Apple's notice of election as a motion. It wasn't a motion, and opposing counsel concedes it wasn't a motion. It was simply a notice. It was just a way of letting Spansion know that Apple had elected to retain its rights under 365N. I think the district court's statements are predicated on the simple mistake of having treated it as or thought that it was a motion. And when you look at how the district court addresses the issue, even if it were a motion, there's nothing for the bankruptcy court to do on remand, because he specifically finds that at the time that Spansion entered bankruptcy, Apple and Spansion were bound by the letter agreement, that's at A23. He finds that no other facts or argument were necessary to determine whether Spansion granted Apple a valid license, that's at A20. And he determines that 365N permits Apple to retain those rights and obligations that the bankruptcy court erred in striking. So doesn't that kind of play into Mr. Lutowsky's theme? Because if it's true that whether you view it as a motion or as a notice, the district court on the appeal had done all the judicial lifting that needed to be done, then the only reason to send it back is because you think there's something to do other than consider whether it's a rejection or a termination. Well, Judge Jordan, as a matter of law, there wouldn't be anything to do on an issue of state law termination in the context of a 365N election. I mean, if you look at this court's opinion in Enri Selnat, and you look at Judge Ambrose's concurrence in Enri Exide, it's very clear that what 365N does is it restores the licensee's rights under the contract as they existed pre-petition and pre-rejection. And the notion that we may have some state law right to terminate the contract based on something that happened post-petition has nothing to do with the 365A analysis for rejection or the 365N analysis for making an election. It just simply has nothing to do with it. Now, does that mean that someday in some other proceeding that expansion couldn't potentially raise the question of whether or not it has a right to terminate or whether or not the contract can be terminated? Maybe, maybe not, but that has nothing to do with the 365N election, which only addresses the issue of responding to a 365A rejection. Which had to have, if it were, if there were to have been a termination, it had to have occurred for 365N purposes pre-petition. Is that right? That's right, Judge Jordan. Is the assertion by Mr. Lutowsky that the evidence in the record that there was a termination is the order itself? Does that mean that even if we were to accept it that way, it wouldn't have legal effect? That's exactly right, Judge Jordan. There is no evidence that there was a pre-petition termination. And in fact, the fact that they brought a rejection motion under the 365A, frankly, judicially stops them from asserting that it was terminated, because the whole premise of bringing a rejection motion under the 365A is that you have a binding executory contract that is in place. So because of the timing, and the district court got this exactly right, because of the timing of the analysis, any of these state law issues that they would want to bring have absolutely nothing to do with the appeal before you or the issue that was before the district court. And I would also note, just for what it's worth, it's not an issue that's addressed in our briefing, but this idea that they could simply elect and say, well, we can terminate at will, because there's not on the face of the contract a termination provision, is simply erroneous. And this Court's opinion in Nova Chemicals at 579 F3 319 is very helpful in that point, because the Court there recognized that when you have a license for patents, and patents, of course, have a defined term, then you actually have a defined term to the length of the license agreement. You'd acknowledge, wouldn't you, that the letter agreement that appears at A126-127 is not your typical patent license? Well, I would acknowledge that many patent licenses have a lot more verbiage to go with them, Judge Jordan. Having said that, I think it is very clear on its face that it is a covenant not to sue. And it's very well settled under Federal Circuit case law that that's all a patent license is. It's a covenant not to sue, or a covenant not to sue is a patent license. And the reason, of course, is having a patent doesn't give you the right to do anything. All a patent gives you a right to do is the right to exclude. And so when you covenant that you're not going to sue someone, you're not going to assert your patents against them, that is a patent license. And indeed, we cite this in our brief, the legislative history behind 365N specifically contemplated covenants not to sue and uses that term specifically. And this idea that my colleague raised that there's no evidence that this letter agreement mattered to Apple, I'll confess, I don't understand that argument. And he makes a similar point in the first footnote of his reply brief. And I think it's based on a fundamental misunderstanding of what the letter agreement did and what the license at issue does. And I think the bankruptcy court also shared that misunderstanding, which is the letter agreement isn't needed. A license isn't needed for Apple to be able to buy product from Spansion. The reason that Apple had a license is so that it could use Spansion's patents, is buy infringing product from somebody else or make its own in what would otherwise be infringing products without having any fear of liability from Spansion. And of course, this was all negotiated against the backdrop of what was indeed a pending ITC proceeding, Judge Fischer. The ITC proceeding was ongoing at the time that the bankruptcy court made these decisions. And so as the district court recites in A19, A20, and A21, it's clear that Apple negotiated with Spansion for Spansion's promise not to sue Apple regarding patents that Samsung allegedly infringed in exchange for Apple's promise to refrain from barring Spansion as an Apple supplier. Spansion agreed to withdraw its claims against Apple in the ITC action and forbear from suing Apple in any other form regarding the same patents. That was the whole purpose of the letter agreement. And so obviously the unexpected and extreme harm to Apple would be it suddenly would have lost its rights to a license that Apple had pursued against it down the road. One final point that I'll make, unless the panel has any other questions. We certainly believe that the bankruptcy court was correct to amend its order under Rule 60B. And I think it was correct under 60B-6, as we've argued. I think it was also correct under 60B-1. But regardless, we don't actually need 60B in order to be able to make the election here for two reasons. One, the order itself shouldn't be construed on its face to grant relief that was never sought, that was never litigated, that was not raised before the bankruptcy court. The terms of the order mean something, don't they? I mean, that's why you had a somewhat distressed bankruptcy judge, because somebody on Apple's behalf sat silently while this thing floated through. And Judge Jordan, certainly we would all be better off if someone had caught and raised that there was this extraneous language and dealt with it right then and there. And I'm not disputing that. I'm just saying that this is your best argument. Oh, Your Honor, my point is just simply, we don't need to go through 60B in order to prevail. And I think this Court's opinion in Enri Federal Mogul, and granted it's a non-presidential opinion, but nonetheless I think the reasoning in it is quite persuasive, that you don't normally construe orders to grant relief that wasn't affirmatively sought. I think that the Court in Tennessee and Enri Robeck makes a very similar point. And Federal Mogul arises in exactly the same procedural posture as this case does, except there there hadn't been a motion for clarification in the 60B motion, which we have in this case. And then second, even if you did construe it as granting that, it wouldn't collaterally stop Apple from making its 365 in an election for the reason that you have an issue that wasn't actually litigated, much less was there a full and fair opportunity to litigate. But the Court doesn't need to decide any of those. My point is just simply to say, I think the Bankruptcy Court was exactly right to grant 60B relief. The District Court was exactly right to affirm it. But if for whatever reason this Court is troubled by that, our prevailing doesn't depend on that. Assuming we agreed with that, do we have to say that Apple was under no obligation to contest the order at the time? Because all they had to do was to wait and make their election? Well, I think because it was a rejection motion, because the only issue that was ever actually litigated, the only issues that were raised in the motion, the only evidence that was presented to the Court was over the exercise of business judgment, the only decision that the Bankruptcy Court made on the record was over the exercise of business judgment, then yes, Apple certainly was entitled to wait and make its election under 365 in. But again, the Court doesn't have to decide that I mean, this Court has to have a definite and firm conviction that the Court committed a clear error of judgment in the conclusion it reached. And I think given the circumstances here and the points that were recited by the Bankruptcy Court, it clearly was not an abuse of discretion to strike the stray line from that order. If the Court has any other questions, I'm happy to answer them. Otherwise, we'll rest on our brief. Thank you very much. Thank you, Your Honor. Mr. Laskowski. Your Honor, I have just three points which I'd like to address in descending order of importance. First, I'd like to clarify the issue of whether the termination had to have occurred pre-petition and whether it could have occurred post-petition in this context. When a debtor rejects an executory contract, the contract is rejected as of the petition date. The debtor is deemed to be a material breach as of that date. There's an exception to this general rule made, for instances, where a non-debtor party is a licensee of the debtor's intellectual property. In that case, under 365N, the non-debtor party can make an election that they will retain the benefits of whatever license they have and an exchange will continue to provide the consideration the debtor's relieved of doing, like, software maintenance and other collateral issues. Separate and distinct from that issue is when can that contract be terminated? Because, after all, if Apple makes this election in a 365N and it's valid, does it mean it has a perpetual license? Suppose we had a more traditional patent license that said it expired on a date certain, or it said it would expire upon 10 days' written notice from the licensor. So there could be many instances where the termination takes place post-petition. It doesn't have to be the petition. But I don't understand them to be saying anything to the contrary. I think what I understood them to be saying, what I'd be interested in having you respond to, is this. Your assertion, I thought, was the evidence of termination in the record is the order. The submission of the order and the order. Those things happen months and months after the filing of the petition. Correct. So there's no evidence in the record, you haven't pointed to any or suggested there is any, that it was terminated pre-petition. So nobody's saying you might not come back and terminate at a later time. The only question is, at the point in time when 365N has to be viewed as applicable, that is, at the petition date, there's nothing at all to indicate there was a termination. And, in fact, as your colleague on the other side says, the very filing of a rejection implies that you accept that there was a valid contract at that time. So that's the thing that I'm interested in hearing you respond to. How can your assertion that the word terminate in the order represents a termination overcome the question of whether there's a valid election to continue as of the point of the petition? Your points are very well taken, Your Honor. If we were to argue that following this motion with a proposed order calling for termination was, in fact, signaling our intent to terminate, even in that scenario, the contract would have been in effect from the petition date until the filing and service of that order. And that Apple could certainly make a 365 election with regard to that date, from the petition date until the date when they were served without order with the language calling for termination. And certainly on remand, the issue would become whether we had given sufficient notice of termination post-petition so that there would be an effective termination. And if the bankruptcy court were to find that, yes, you did, you signaled your intent to terminate, certainly by serving this order and filing it, certainly at the hearings, then it may be that the notice of election is certainly of limited effect. And I would submit it's for that reason that the bankruptcy court in its own order said nothing in that order. The order was entered without prejudice of the issue whether under applicable law the letter agreement has been or can be terminated. And, in fact, the sister court in following up on that remanded on the issue of the notice of election. It was characterized as Apple's motion, but I think it was a reference to the notice of election. With regard to the issue of harm, I went over this in my opening argument. I just have a couple of comments. I mean, again, there was no evidence of real harm to Apple. There was no evidence that they were paying costs and fees as opposed to being indemnified by Samsung, for example. There was no evidence that they were purchasing products which contained within them products which Apple, I mean, which Samsung contained, infringed its patents. And then, finally, with regard to the federal mogul case, which was mentioned earlier, that was one where there was, I think, a lease rejection combined with a modification of a lease, and the court said you can't do that. I think one way to distinguish that case is there was an immediate appeal. And when it was entered granting inappropriate relief, there was an appeal. It went to the district court and ultimately found its way to this court. Here, there was no appeal filed. And as we said in our papers, Rule 60 is not a substitute for an appeal. Good. Thank you. Any questions? Good. Thank you very much. The case was very well briefed and very well argued.